EAGLE-PICHER LEAD CO. et al. v. MADDEN et al.

No. 1119.

District Court, N. D. Oklahoma.

June 18, 1936.

John H. Flanigan, Jr., of Carthage, Mo., and A. Scott Thompson and A. C. Wallace, both of Miami, Okl., for plaintiffs.

Geo. O. Pratt, of Kansas City, Mo., and Robert B. Watts, of Washington, D. C., for defendants.

KENNAMER, District Judge.

If Congress, by the National Labor Relations Act approved July 5, 1935, 49 Stat. 449 (29 U.S.C.A. § 151 et seq.), entitled, "An Act to diminish the causes of labor disputes burdening or obstructing interstate and foreign commerce, to create a National Labor Relations Board, and for other purposes," intended to vest the National Labor Relations Board with jurisdiction over intrastate commerce and employers

and their employees not engaged in interstate commerce, then the act is clearly void for want of power under the national Constitution to enact such legislation and vest such jurisdiction in any national administrative board.

That "the government of the United States is one of delegated, limited and enumerated powers," and that "therefore, every valid Act of Congress must find in the constitution some warrant for its passage," has been reiterated so often by the Supreme Court of the United States that the contention Congress is undertaking to usurp powers not delegated to the federal government will be rejected unless the language used by the Congress is clear and explicit. Grafton v. United States, 206 U. S. 333, 27 S.Ct. 749, 51 L.Ed. 1084, 11 Ann. Cas. 640; Carter v. Carter Coal Company, 56 S.Ct. 855, 80 L. Ed. ——.

■ Neither can Congress legislate a fact; that is, make a thing a fact which is not a fact. Congress cannot by its ipse dixit convert intrastate commerce into interstate commerce.

■ As clearly set forth in Carter v. Carter Coal Company, 56 S.Ct. 855, 80 L.Ed. ——, handed down May 18, 1936, the federal regulatory power in matters relating to interstate commerce ceases when commercial intercourse ends, and correlatively the power does not attach until interstate commercial intercourse begins. Mining and manufacturing is not interstate commerce, though ultimately the goods or minerals may go into interstate or foreign commerce.

In Champlin Refining Company v. Corporation Commission, 286 U.S. 210, 52 S. Ct. 559, 565, 76 L.Ed. 1062, 1063, 86 A.L.R. 403, the plaintiff attacked the validity of certain rules and regulations of the Oklahoma Corporation Commission promulgated under an act of the Oklahoma Legislature restricting the production of crude oil on the ground, among others, that the commission's rules operated as a restriction on interstate commerce in view of the finding of fact by the commission that the great percentage of crude oil produced in Oklahoma went into interstate commerce. In rejecting plaintiff's contention in that case, Mr. Justice Butler, speaking for the court, said: "Plaintiff contends that the act and proration orders operate to burden interstate commerce in crude oil and its products in violation of the commerce clause. * * * It is clear that the regulations prescribed and authorized by the act and the proration established by the commission apply only to production and not to sales or transportation of crude oil or its products. Such production is essentially a mining operation, and therefore is not a part of interstate commerce, even though the product obtained is intended to be and in fact is immediately shipped in such commerce. Oliver Iron Min. Co. v. Lord, 262 U.S. 172, 178, 43 S.Ct. 526, 67 L.Ed. 929, 935; Hope Natural Gas Co. v. Hall, 274 U.S. 284, 288, 47 S.Ct. 639, 71 L.Ed. 1049, 1052; Foster-Fountain Packing Co. v. Haydel, 278 U.S. 1, 10, 49 S.Ct. 1, 73 L.Ed. 147, 152; Utah Power & Light Co. v. Pfost, supra [286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038]. No violation of the commerce clause is shown."

See, also, Hammer v. Dagenhart, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101, 3 A. L.R. 649, Ann.Cas.1918E, 724.

■ The National Labor Relations Act approved July 5, 1935, does not vest the National Labor Relations Board with inquisitorial powers into the relation between employer and employee, except where that relation exists in interstate commerce matters.

■ The evidence in this case does not show that the plaintiffs are engaged in interstate commerce, but the evidence does show that the defendants are attempting to exercise jurisdiction over the relation of employer and employee between plaintiffs and their employees, and if not restrained will proceed to exercise an unauthorized power by which it will harass and annoy and damage the plaintiffs. Plaintiffs have no adequate remedy by exercising the right to appeal to the Circuit Court of Appeals granted by the National Labor Relations Act. The National Labor Relations Board is a fact-finding and administrative commission. It has no judicial functions, although vested with authority to subpœna witnesses and inquire into the business affairs of employers. The act expressly provides that: "In any such proceeding the rules of evidence prevailing in courts of law or equity shall not be controlling." Unless restrained, it may proceed arbitrarily.

At this point I think it appropriate to quote the following from the opinion of the United States Supreme Court in Jones v. Securities and Exchange Commission,[1] 56 S.Ct. 654, 662, 80 L.Ed. ——, to wit: "An official inquisition to compel disclosures of

**1** 298 U.S. 1

fact is not an end, but a means to an end; and it is a mere truism to say that the end must be a legitimate one to justify the means. The citizen, when interrogated about his private affairs, has a right before answering to know why the inquiry is made; and if the purpose disclosed is not a legitimate one, he may not be compelled to answer."

In Carter v. Carter Coal Company, 56 S.Ct. 855, 862, 80 L.Ed. ——, quoting from Pennsylvania v. West Virginia, 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300, the court said: "One does not have to await the consummation of threatened injury to obtain preventive relief. IF THE INJURY IS CERTAINLY IMPENDING, THAT IS ENOUGH." (Caps mine.)

Superior state courts issue writs of prohibition restraining inferior courts and tribunals from exercising jurisdiction not authorized by law or exceeding their jurisdiction.

The rule announced in Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150, is not applicable here, because the Virginia Railroad Commission had authority to prescribe rules, jurisdiction over the subject-matter, and the Virginia Constitution granted an appeal to the Supreme Court of Appeals.

Under the facts in this case, however, the National Labor Relations Board has no jurisdiction to begin with, and in my opinion, this court, in the exercise of its equitable jurisdiction, is fully authorized in restraining the agents of the Board and its attorneys from proceeding to exercise inquisitorial powers over the relationship between plaintiffs and their employees. I do not regard Texas & New Orleans Railroad Company v. Brotherhood of Railway & Steamship Clerks, 281 U.S. 548, 50 S.Ct. 427, 433, 74 L.Ed. 1034, as upholding the defendants' contention that the National Labor Relations Act is constitutional as construed by defendants. The act of Congress under consideration in the Brotherhood of Railway & Steamship Clerks Case, supra, is very different from the National Labor Relations Act of 1935. It is true that the National Labor Relations Act of 1935 declares that "an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay," (section 8

(2), 29 U.S.C.A. § 158 (2) but otherwise the employer is little more than the financial agent of the employees. Whereas, the act of Congress of 1926, 44 Stat. 577 (see 45 U.S.C.A. §§ 151–163) under consideration in the Brotherhood of Railway & Steamship Clerks Case, supra, protected the employer against coercion by the employees and protected the employees against coercion by the employer. In that case, Mr. Chief Justice Hughes, speaking for the court, said: "In reaching a conclusion as to the intent of Congress, the importance of the prohibition in its relation to the plan devised by the act must have appropriate consideration. Freedom of choice in the selection of representatives on each side of the dispute is the essential foundation of the statutory scheme. All the proceedings looking to amicable adjustments and to agreements for arbitration of disputes, the entire policy of the act, must depend for success on the uncoerced action of each party through its own representatives to the end that agreements satisfactory to both may be reached and the peace essential to the uninterrupted service of the instrumentalities of interstate commerce may be maintained. There is no impairment of the voluntary character of arrangements for the adjustment of disputes in the imposition of a legal obligation not to interfere with the free choice of those who are to make such adjustments. On the contrary, it is of the essence of a voluntary scheme, if it is to accomplish its purpose, that this liberty should be safeguarded. The definite prohibition which Congress inserted in the act can not therefore be overridden in the view that Congress intended it to be ignored. As the prohibition was appropriate to the aim of Congress, and is capable of enforcement, the conclusion must be that enforcement was contemplated."

Counsels' attention is called to amended Equity Rule 70½, promulgated November 25, 1935 (28 U.S.C.A. following section 723). Counsel for the plaintiffs and defendants are requested to submit to the court findings of facts separately stated as required by that rule. These findings must be submitted at 9:30 a. m. June 29, 1936, whereupon a temporary injunction will be issued as prayed for in plaintiffs' bill.