William Riley **HUGHES**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. M–77–125.

Court of Criminal Appeals of Oklahoma.

Dec. 6, 1977.

Rehearing Denied Jan. 6, 1978.

R. M. Helton, Wichita Falls, Tex., for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Presiding Judge:

The Appellant, William Riley Hughes, hereinafter referred to as defendant, was charged in the District Court, Jefferson County, Case No. CRM–76–42, with Unlawfully Transporting for Sale Outside of the State of Oklahoma Minnows Which Were Seined or Procured Within the Waters of Oklahoma, pursuant to the provisions of 29 O.S.Supp.1974, § 4–115B. The evidence was stipulated to by the parties and submitted to the trial court after a jury was waived. Upon conviction, the trial court set punishment at a fine of Two Hundred Dollars ($200.00) and costs. From said judgment and sentence a timely appeal has been perfected to this Court.

The stipulated facts are as follows: The defendant for thirty years prior to the date of the offense in question was licensed under the law of the State of Texas as a minnow dealer; the defendant had a regular commercial minnow business located in Archer County, Texas, approximately two miles south of Wichita Falls, Texas; he had been engaged in such business for one year before the date of the offense in question; on the day in question he purchased a load of minnows from Fred Schokey, a minnow dealer licensed under the laws of the State of Oklahoma, at Mr. Schokey's place of business located at Purcell, Oklahoma; defendant was en route to his place of business at Wichita Falls, Texas, transporting the load of minnows in his vehicle, when he was detained and arrested in Waurika, Jefferson County, Oklahoma; the wholesale value and cost price of the minnows was $350.00, and the defendant was detained and arrested by Hackell Bershere, an Oklahoma licensed Game Ranger, without a warrant. The amended information further reflects that the date of the purchase was on or about April 23, 1976.

Defendant's sole assignment of error is that 29 O.S.Supp.1974, § 4–115B violates the interstate commerce clause of the Constitution of the United States which confers upon the Congress of the United States

exclusive power to regulate interstate commerce.

Section 4–115B reads as follows:

"No person may transport or ship minnows for sale outside the state which were seined or procured within the waters of this state except that:

"1. Nothing contained herein shall prohibit any person from leaving the state possessing three (3) dozen or less minnows;

"2. Nothing contained herein shall prohibit sale and shipment of minnows raised in a regularly licensed commercial minnow hatchery."

The defendant argues that § 4–115B prohibits the export out of Oklahoma of minnows and that such state action is condemned by the United States Supreme Court in *Foster-Fountain Packing Co. v. Haydel*, 278 U.S. 1, 49 S.Ct. 1, 73 L.Ed. 147 (1928), as a violation of the interstate commerce clause.

However, *Foster*, supra, dealt with a Louisiana statute which prohibited raw shrimp, or raw shells, hulls and heads from being shipped out of Louisiana but allowed shrimp meat and bran, canned and manufactured within Louisiana, to be freely shipped and sold in interstate commerce. The Court held that Louisiana, as the representative of its people, could have retained the shrimp for consumption and use in Louisiana. It did not. The Court found that the sole purpose of the Act was to favor the canning of meat and manufacture of bran in Louisiana by withholding raw shrimp from plants located in nearby Mississippi. The Louisiana Act was, therefore, in violation of the commerce clause.

In the instant case § 4–115B prohibits anyone from transporting or shipping for sale, outside of Oklahoma, minnows which were seined or procured within the waters of Oklahoma. The issue raised is clearly distinguishable from that raised in *Foster*, supra, since the primary purpose of § 4–115B is to reduce depletion of natural minnows.

The United States Supreme Court has held on numerous occasions that the wild animals and fish within a state's border are, so far as capable of ownership, owned by the state in its sovereign capacity for the common benefit of all its people. Because of such ownership, and in the exercise of its police power, the state may regulate and control the taking, subsequent use and property rights that may be acquired therein. *Lacoste v. Department of Conservation*, 263 U.S. 545, 44 S.Ct. 186, 68 L.Ed. 437 (1928); *Geer v. State of Connecticut*, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793 (1896); and *Foster*, supra. As stated in *Lacoste*, supra, protection of the wildlife of a state is peculiarly within the police power of the state, and the state has great latitude in determining what means are appropriate for its protection.

As aptly stated in the State's brief, Oklahoma law does not prohibit commercial minnow hatcheries within her borders from selling stock minnows to anyone, resident or nonresident, and minnows purchased therefrom may be freely exported. However, the law served to protect against the depletion of minnows in Oklahoma's natural streams through commercial exportation. No person is allowed to export natural minnows for sale outside of Oklahoma. Such a prohibition is not repugnant to the commerce clause and the defendant's assignment of error is without merit. The judgment and sentence appealed from is, accordingly, *AFFIRMED*.

BUSSEY, P. J., and CORNISH and BRETT, JJ., concur.