REEVES, INC., Appellee,

v.

Tom KELLEY, Stan Frank, John E. Phelps, Al Sandvig and Dave Johnson, Members of the South Dakota Cement Commission, Appellants.

No. 78–1578.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1979.

Decided Aug. 7, 1979.

---

Michael B. DeMersseman and Curtis S. Jensen, of Gunderson, Farrar, Aldrich, Warder & DeMersseman, Rapid City, S.D., on brief, for appellants.

Dennis M. Kirven, of Kirven & Kirven, Buffalo, Wyo., on brief, for appellee.

Before LAY, ROSS and McMILLIAN, Circuit Judges.

LAY, Circuit Judge.

The Supreme Court has remanded our decision, 586 F.2d 1230 (8th Cir. 1978), for us to reconsider in light of its recent opinion in *Hughes v. Oklahoma*, —— U.S. ——, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979). Upon review, we discern significant differences between the cases which cause us to adhere to our earlier holding that the Commerce Clause, Art. I, § 8, cl. 3 of the United States Constitution, is not violated by the State of South Dakota's policy of preferential sale of cement it manufactures to South Dakota residents.

In *Hughes v. Oklahoma* the Supreme Court overruled *Geer v. Connecticut*, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793 (1896). The Court rejected the legal fiction that a state owns wild game as a representative of its citizens and the correlative theory that it could control not only the taking of game, but also its transportation out-of-state even after it was lawfully possessed by another, thereby preventing it from becoming an item of interstate commerce. 99 S.Ct. at 1731–33. Thus, the well established doctrine that a state may not discriminatorily regulate interstate commerce by giving its residents preferred access over out-of-state residents to local natural resources, *see, e. g., City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *Pennsylvania v. West Virginia*, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923);

*West v. Kansas Natural Gas Co.*, 221 U.S. 229, 31 S.Ct. 564, 55 L.Ed. 716 (1911), now applies as well to wild game.

■ Our original decision in *Reeves v. Kelley*, 586 F.2d 1230 (8th Cir. 1978), which upheld South Dakota's preference for in-state residents in its sale of cement, was not based on the rationale that the cement was a state controlled natural resource and therefore South Dakota could regulate or prohibit its trade in interstate commerce. *Reeves v. Kelley* presented the unusual situation in which the challenge was to a state, which as a manufacturer-seller faced with production demands it could not meet, made an administrative decision to give priority to meeting the needs of its residents. As our opinion pointed out, there was no allegation that South Dakota regulated or restricted out-of-state sale of privately manufactured cement or exercised its police powers to suppress competition in the manufacture or sale of cement. We held that South Dakota was acting in a proprietary capacity in the sale of a product it manufactured and that as such it had the right, as any other entrepreneur, to sell to whomever it chose.[1] The issue remains whether the decision in *Hughes v. Oklahoma* affects our prior holding.

■ In both *Hughes v. Oklahoma* and *Geer v. Connecticut*, the state restricted out-of-state sale of wildlife reduced to possession and ownership by private individuals. In contrast South Dakota has not attempted "to prevent privately owned articles of trade from being shipped and sold in interstate commerce . . . ." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 627, 98 S.Ct. 2531, 2537, 57 L.Ed.2d 475 (1978), (quoting *Foster-Fountain Packing Co. v. Haydel*, 278 U.S. 1, 10, 49 S.Ct. 1, 73 L.Ed. 147 (1928)). In entering the market

---

1. A state may freely purchase to meet its needs. Although not in the context of a Commerce Clause challenge, the Supreme Court has written:

> Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms

and conditions upon which it will make needed purchases.

*Perkins v. Lukens Steel, Co.*, 310 U.S. 113, 127, 60 S.Ct. 869, 876, 84 L.Ed. 1108 (1940).

*See also American Yearbook Co. v. Askew*, 339 F.Supp. 719 (M.D.Fla.), aff'd mem., 409 U.S. 904, 93 S.Ct. 230, 34 L.Ed.2d 168 (1972).

and preferring residents in sales, South Dakota has not attempted to regulate commerce; it has not attempted to interfere with or usurp federal regulatory power.[2] While out-of-state purchasers such as Reeves may feel the effect of a reduced supply of cement in the interstate market, the effect is the result of a major supplier's temporary marketing decision, not unlike the market force exerted by Maryland's purchasing policies in *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976).

South Dakota has not sought to *regulate* interstate commerce in the sale of cement. We conclude that its action is more similar to Maryland's preference for its residents in its entry into the automobile scrap processing market, upheld in *Hughes v. Alexandria Scrap Corp.*, than conduct at which the prohibitions of the Commerce Clause have historically been directed.[3]

■ We therefore abide by our previous holding that the Commerce Clause does not prohibit South Dakota "from participating

---

2. The issue posed here is the constitutional restriction under the Commerce Clause on state action when Congress has been silent. A state engaging in business is subject to federal power to regulate commerce regardless of whether it acts in a proprietary or sovereign capacity, *see United States v. California*, 297 U.S. 175, 183–87, 56 S.Ct. 421, 80 L.Ed. 567 (1936), and may even be prohibited from selective marketing practices. *See Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 810 n. 19, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976); *cf. Douglas v. Seacoast Products, Inc.*, 431 U.S. 265, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977) (federal preemption of state fishing regulations). We hesitate to hold the Commerce Clause standing alone requires judicial scrutiny of a state's administrative marketing decisions to insure the least discriminatory alternative is chosen. *See* 80 Harv.L.Rev. 1357 (1967).

3. We recognize that Justices Brennan, White and Marshall are of the opinion that the type of state action does not influence application of Commerce Clause restrictions, *Hughes v. Alexandria Scrap Corp.*, 426 U.S. at 818, 96 S.Ct. 2488 (Brennan, J., dissenting). We also recognize that *Hughes v. Alexandria Scrap Corp.* differs from *Reeves v. Kelley* in Maryland's use of market subsidies and its laudatory environmental goal. Nonetheless, *Hughes v. Alexandria Scrap Corp.* is the decision most analogous factually to the instant case, in which the state participates in the market place as a seller, and we therefore deem its analysis controlling. We are confronted with no other decision where the state, acting in a proprietary capacity, is challenged in its marketing decisions under the Commerce Clause alone. We fully recognize that dictum in earlier decisions provides pause for reflection on whether the distinction we make is a proper one. *See Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 522, 55 S.Ct. 497, 500, 79 L.Ed. 1032 (1935) (" '[A] state may not, in any form or under any guise, directly burden the prosecution of interstate business.' ") (quoting *International Textbook Co. v. Pigg*, 217 U.S. 91, 112, 30 S.Ct. 481, 54 L.Ed. 678 (1910)); *West v. Kansas Natural Gas Co.*, 221 U.S. 229,

31 S.Ct. 564, 55 L.Ed. 716 (1911). In *West* the Court struck down a protectionist statute saying:

> The statute of Oklahoma recognizes [gas] to be a subject of intrastate commerce, but seeks to prohibit it from being the subject of interstate commerce, and this is the purpose of its conservation. . . . If the States have such power, a singular situation might result. Pennsylvania might keep its coal, the Northwest its timber, the mining states their minerals. And why may not the products of the field be brought within the principle? Thus enlarged, or without that enlargement, its influence on interstate commerce need not be pointed out. To what consequences does such power tend? If one state has it, all states have it; embargo may be retaliated by embargo, and commerce will be halted at state lines. And yet we have said that "in matters of foreign and interstate commerce there are no state lines." In such commerce, instead of the states, a new power appears and a new welfare,—a welfare which transcends that of any state. But rather let us say it is constituted of the welfare of all of the states, and that of each state is made the greater by a division of its resources, natural and created, with every other state, and those of every other state with it. This was the purpose, as it is the result, of the interstate commerce clause of the Constitution of the United States. If there is to be a turning backward it must be done by the authority of another instrumentality than a court.

*Id.* at 255–56, 31 S.Ct. at 571.

Yet these and other relevant decisions involve, in one form or another, state regulation of commercial transactions, and are not apposite to the situation in which an administrative agency of a state, whose initial entry into the manufacture of cement was not made with a discriminatory motive, makes a self-serving marketing decision. If our distinction is incorrect, we think it better for the Supreme Court to make the pronouncement rather than for this court to furrow new ground.

in the market and exercising the right to favor its own citizens over others." *Hughes v. Alexandria Scrap Corp.*, 426 U.S. at 810, 96 S.Ct. at 2498.