SOUTH–CENTRAL TIMBER DEVELOPMENT, INC., Plaintiff-Appellee,

v.

Robert LeRESCHE, Commissioner of the Department of Natural Resources of the State of Alaska; et al., Defendants-Appellants,

Kenai Lumber Company, Inc., Intervenor Defendant.

SOUTH–CENTRAL TIMBER DEVELOPMENT, INC., Plaintiff-Appellee,

v.

Robert LeRESCHE, Commissioner of the Department of Natural Resources of the State of Alaska; et al., Defendants,

Kenai Lumber Company, Inc., Intervenor Defendant-Appellant.

Nos. 81–3053X, 81–3081X.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1981.

Decided Dec. 1, 1982.

LeRoy E. DeVeaux, Wanamaker, DeVeaux & Crabtree, Anchorage, Alaska, for South-Central.

Shelly J. Higgins, Asst. Atty. Gen., Anchorage, Alaska, for LeResche and State of Alaska.

Richard Helm, Burr, Pease & Kurt, Anchorage, Alaska, for Kenai Lumber Co.

Before GOODWIN, KENNEDY, and SKOPIL, Circuit Judges.

KENNEDY, Circuit Judge:

The State of Alaska, by statute, authorizes the imposition of certain conditions on the sale of state-owned timber, conditions pointedly designed to favor its local timber processors. In an action brought by a prospective timber buyer challenging the constitutionality of the state's restrictions, the district court held the Alaska statute violates the commerce clause of the United States Constitution. We conclude there is implicit approval of the Alaska statute under congressional statutes which impose similar conditions on the sale of timber from federal lands. We reverse the district court's finding of invalidity, 511 F.Supp. 139.

The Commissioner of the Department of Natural Resources of Alaska is by law given discretion to condition particular sales of timber on primary manufacture in Alaska.[1]

---

1. The Commissioner of the Department of Natural Resources of Alaska, upon recommendation of the Director of the Division of Lands of the Department of Natural Resources, "shall determine the timber and other materials to be sold, and the limitations, conditions and terms of sale." Alaska Stat. § 38.05.115.

The Alaska regulations provide that:
(a) The director may require that primary manufacture of logs, cordwood, bolts or other similar products be accomplished within the State of Alaska.
(b) The term primary manufacture means manufacture which is first in order of time or development. When used in relation to sawmilling, it means
(1) the breakdown process wherein logs have been reduced in size by a headsaw or gang saw to the extent that the residual cants, slabs, or planks can be processed by resaw equipment of the type customarily used in log processing plants; or
(2) manufacture of a product for use without further processing, such as structural timbers (subject to a firm showing of an order or orders for this form of product).
(c) Primary manufacture, when used in reference to pulp ventures, means the breakdown process to a point where the wood fibers have been separated. Chips made from timber processing wastes shall be considered to have received primary manufacture. With respect to veneer or plywood production, it means the production of green veneer. Poles and piling, whether treated or untreated, when manufactured to American National Institute Standards specifications are con-

In 1980 the Commissioner gave notice of a proposed sale of state-owned timber at Icy Cape and announced that Alaska would require primary manufacture within the state as a special provision of the contract.[2] The Commissioner stated the requirement was necessary to insure "a continuing supply of timber for existing industry" during temporary shortages of timber from federal lands. Final Finding for Icy Bay/Cape Yakatuga Sale at 2 (Excerpt of Record (E.R.) 121, 122).

Appellee South-Central Timber Development, Inc. is an Alaska corporation engaged in purchasing timber and processing it for sale. It does not own an operating mill in Alaska, and its practice had been to process Alaskan timber outside the state. When it learned of the new requirement, South-Central brought this action for injunctive relief against various state officials. The company claimed it was prevented from bidding on the Icy Cape sale by the added expense of in-state processing. The district court granted a temporary restraining order, and when it expired the appellants agreed to postpone the sale until a final decision on the merits.

Kenai Lumber Company, Inc. intended to bid at the Icy Cape sale to obtain timber for its sawmill in Alaska. The district court allowed Kenai to intervene in the suit as a defendant. Upon cross-motions for summary judgment, the district court granted summary judgment for plaintiff-appellee, and concluded that the primary manufacture requirement put an impermissible burden on interstate commerce.

It long has been settled that states may regulate in some areas of commerce, absent congressional action to displace such laws, *Cooley v. Board of Wardens of Port of Philadelphia,* 53 U.S. 298 (12 How.), 13 L.Ed. 996 (1851); but state statutes which discriminate against interstate commerce for the purpose of local, economic protection are invalid in virtually every case. *City of Philadelphia v. New Jersey,* 437 U.S. 617, 627, 98 S.Ct. 2531, 2537, 57 L.Ed.2d 475 (1978). The rule has been invoked to invalidate state statutes which promote local processing industries by forbidding shipment of raw resources, *Foster-Fountain Packing v. Haydel,* 278 U.S. 1, 49 S.Ct. 1, 73 L.Ed. 147 (1928). The commerce clause by its own power invalidates such discriminatory statutes.

Despite the force of this rule, there are narrow exceptions, as in the case of a state proprietary activity. *Reeves, Inc. v. Stake,* 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980). Alaska contends its statute is saved by that exception here. We need not reach the question, however. This is not a case where the courts must apply the commerce clause absent a declaration by Congress respecting the economic regulation at issue. Here, Congress has acted to validate the state policy.

While there may be some outer limits to its power, it is generally accepted that Congress is free to approve and thereby validate commercial regulations otherwise beyond a state's authority. Congress can "confer upon the States an ability to restrict the flow of interstate commerce that they would not otherwise enjoy." *Lewis v.*

---

sidered to have received primary manufacture.

11 A.A.C. 76.130. The primary manufacture requirement is defined further by the Governor's Policy Statement of Primary Manufacture of May 7, 1974.

**2.** The notice of public sale set out the primary manufacture contract term as follows:

Timber cut under this contract shall not be transported for primary manufacture outside the State of Alaska without written approval of the State.

Primary Manufacture is defined under 11 AAC 76.130 and the Governor's policy statement of May 1974. For purposes of this contract, cants may be manufactured from all species for export and will be considered to have received primary manufacture when sawed up to a maximum thickness of 12 inches and may be of any width. Timbers cut thicker than 12 inches must be squared on four sides along their entire length with allowances for one-third of each dimension (thickness and width) allowed in wane.

Chips are considered to have received primary manufacture.

*BT Investment Managers, Inc.,* 447 U.S. 27 at 44, 100 S.Ct. 2009 at 2019, 64 L.Ed.2d 702.

The rule acknowledging congressional power to approve otherwise impermissible state regulation of interstate commerce usually is applied in cases where Congress has expressly authorized such regulation, see, e.g., *Western & Southern Life Insurance Co. v. State Board of Equalization of California,* 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). But such express authorization is not always necessary. There will be instances, like the case before us, where federal policy is so clearly delineated that a state may enact a parallel policy without explicit congressional approval, even if the purpose and effect of the state law is to favor local interests.

The federal government has consistently endorsed restrictions on the interstate shipment of timber to protect the local processing capability of isolated areas, evincing a general federal policy of promoting geographic dispersion in the timber industry. Since 1928 the Forest Service has limited the export of unprocessed logs from National Forests in Alaska under general authority granted by the Organic Administration Act of June 4, 1897 (16 U.S.C. §§ 475, 551). In 1969 Congress set a quota on the unprocessed timber that could be exported from federal lands west of the 100th meridian (a line running south from the mid-point of the North Dakota-Canadian boundary, through central Texas). Lindell, *Log Export Restrictions of the Western States and British Columbia,* 7 (U.S. Dept. of Agriculture 1978) (E.R. 130). In 1973 Congress

strengthened its policy by a complete ban on the export of unprocessed timber from such lands.[3]

When Alaska was admitted to statehood in 1959 and received title to a large portion of the territory's public lands, it continued to adhere, with limited exceptions, to preexisting federal policy.[4] Lindell, *Log Export Restrictions of the Western States and British Columbia,* 7 (U.S. Dept. of Agriculture 1978) (E.R. 135). The state's primary manufacture requirements duplicate those imposed on federal timber and serve the same objective, that of promoting industrial developments in isolated areas. The decision of Alaska's Commissioner of Natural Resources to condition the sale at Icy Cape on primary manufacture was made in the wake of a temporary suspension of federal timber sales from the Tongass and Chugach National Forests. Final Findings on Icy Bay/Cape Yakatuga Sale at 2 (E.R. 122). Its purpose was to protect local processors from the resulting slack in demand for their services. The state's decision could not have been more in keeping with federal timber policy. In these circumstances, we find ample congressional acquiescence in Alaska's primary manufacture requirement. The judgment of the district court is REVERSED.

---

3. The Forest Service regulations are found at 36 C.F.R. § 223.10(b) (1981). The Bureau of Land Management provisions are set forth at 43 C.F.R. §§ 5400.0–3(c), –5 (1981).

4. The regulations for Alaska state:
   Unprocessed timber from National Forest System lands in Alaska may not be exported from the United States or shipped to other States without prior approval of the Regional Forester. *This requirement is necessary to ensure the development and continued existence of adequate wood processing capacity in that State for the sustained utilization of timber from the National Forests which are geographically isolated from other processing*

*facilities.* In determining whether consent will be given for the export of timber, consideration will be given to, among other things, whether such export will (1) permit more complete utilization on areas being logged primarily for local manufacture, (2) prevent loss or serious deterioration of logs unsaleable locally because of an unforeseen loss of market, (3) permit the salvage of timber damaged by wind, insects, fire, or other catastrophe, (4) bring into use a minor species of little importance to local industrial development, or (5) provide material required to meet urgent and unusual needs of the Nation. 36 C.F.R. § 223.10(c) (1981) (emphasis added).