SINCLAIR PIPE LINE COMPANY, a Delaware Corporation, Plaintiff,

v.

Harry SNYDER, Jr., and John I. Young, Commissioners of the State Corporation Commission; and Harold R. Fatzer, Attorney General of the State of Kansas, Defendants.

SINCLAIR CRUDE OIL COMPANY, a corporation, Plaintiff,

v.

STATE CORPORATION COMMISSION OF the STATE OF KANSAS, Harry Snyder, Jr., and John I. Young, as Members of Said Corporation Commission, and as Individuals, Defendants.

Producers Pipe Line Company, Inc., Intervenor in Number T–1272.

Nos. T–1272, T–1273.

United States District Court
D. Kansas.

Jan. 16, 1956.

Supplemental Opinion Feb. 6, 1956

Lilleston, Spradling, Gott & Stallwitz, Wichita, Kan., Angus A. Davidson, Dudley C. Phillips, Donald B. Trimble, Independence, Kan., for plaintiff.

Harold R. Fatzer, E. H. Hatcher, Topeka, Kan., Martindell, Carey, Brown & Brabets, Hutchinson, Kan., C. C. Linley, Wichita, Kan., for defendant.

Stanley E. Toland, Iola, Kan., Charles C. McCarter, Thomas Evans, Topeka, Kan., David W. Carson, J. W. Mahoney, Kansas City, Kan., John F. Hayes, Hutchinson, Kan., for intervener.

Before HUXMAN, Circuit Judge, MELLOTT, Chief Judge, and HILL, District Judge.

HUXMAN, Circuit Judge.

In cause Number T–1272 the Sinclair Pipe Line Company [1] has brought an action against Harry Snyder, Jr., John Young and Richard C. Byrd, as Commissioners of the State Corporation Commission,[2] and Harold R. Fatzer, Attorney General of the State of Kansas, to enjoin them from attempting to prevent, regulate or interfere with the sale of a part of its interstate pipeline system and to enjoin orders of the Commission relating to such sale.

In Number T–1273 Sinclair Crude Oil Company,[3] a Delaware Corporation, instituted an action against the Commissioners and the Attorney General to enjoin them from attempting to enforce an order of the Commission compelling it to continue to purchase oil in two areas in which it had been purchasing oil and in each of which it announced that it would thereafter purchase no more oil.

In both actions the plaintiffs prayed for the convocation of a three-judge court under 28 U.S.C.A. § 2281. This court was constituted and both cases came on for hearing on the 10th day of October, 1955. It was stipulated that the basic issues in the two cases were substantially the same and that they should be consolidated for trial and they were so consolidated and tried. Producers Pipe Line Company [4] was permitted to intervene. It is aligned in interest with Sinclair Pipe Line Company.

A somewhat detailed statement of fact in each case is essential to a comprehension of the difficult questions presented for decision. A separate statement of fact will be made with respect to each case.

Number T–1272.

The Pipe Line Company, a Delaware Corporation, owns and operates an interstate pipeline system as a common carrier engaged in the transportation of petroleum and petroleum products. As an integral part of its system it owns a line and various feeder systems connected therewith. Among these is (1) a pipeline extending from the vicinity of Wellsville, Kansas, to the vicinity of Humboldt, Kansas, known as the Paola Crude Gathering System, and (2) a pipeline system extending from the vicinity of Eureka, Kansas, to the vicinity of Humboldt, Kansas, known as the Eureka Crude Gathering System. Through these two systems the Pipe Line Company transports oil for customers purchasing oil in two stripper oil fields connected with these two gathering line systems.

On September 14, 1955, the Pipe Line Company executed for a valuable consideration a conveyance of the Eureka and Paola Crude Gathering Systems to Pro-

---

1. Herein referred to as the Pipe Line Company.

2. Byrd was not a Commissioner at the time the action was originally brought but was subsequently upon his appointment to the Commission added as a party defendant.

3. Herein referred to as Crude Oil.

4. Herein referred to as Producers.

ducers Pipe Line Company, Inc., a Kansas Corporation, incorporated for the purpose of purchasing such portions of the Pipe Line Company's system. The conveyance expressly provided that the title and possession of the two systems would vest in Producers Pipe Line Company as of 7:00 a. m. October 1, 1955. The conveyance was regularly filed of record in Greenwood County, Kansas, on September 17, 1955, and was likewise filed in Allen County, Kansas, on September 20, 1955. For more than thirty-five years prior to such transaction, these two systems were utilized exclusively by the Pipe Line Company and its predecessors in interest for the transportation of petroleum in interstate commerce. The Pipe Line Company has never engaged in the business of producing crude oil from oil producing properties.

On September 30, 1955, the Pipe Line Company received from the Kansas State Corporation Commission a notice of complaint and hearing dated September 28, 1955, stating that complaint had been made of the proposed sale and that the complainants desired to have the sale set aside and that such complaint would be heard by the Commission at 10:00 a. m., Tuesday, November 8, 1955. Accompanying the notice of complaint and hearing was an order dated September 28, 1955, issued by the Commission, which in effect ordered (1) investigation pursuant to G.S.Kan.1949, 66–110 et seq., into the proposed sale of said gathering systems and the proposed abandonment of their Eureka Crude Gathering System, (2) directing the Pipe Line Company, Producers Pipe Line Company, Inc., W. S. Fees and Marvin N. Boyer to cease and desist from further negotiations concerning the sale until the further orders of the Commission, and (3) that said last named parties cease any attempt to abandon the Eureka Crude Gathering System and to continue to accept oil for transportation in the manner in effect until further order of the Commission. The complaint alleges, and it seems to be without dispute, that the order was issued upon an unverified complaint and

without notice to the Pipe Line Company, Producers Pipe Line Company, W. S. Fees and Marvin E. Boyer, and without affording them an opportunity to be heard.

Thereafter, on or about the 30th day of September, 1955, the State of Kansas, ex rel. Harold R. Fatzer, Attorney General, and the State Corporation Commission of the State of Kansas, as plaintiffs, commenced a civil action in the District Court of Shawnee County, Kansas, against the Pipe Line Company, the Producers Pipe Line Company, W. S. Fees and Marvin E. Boyer, as defendants, in which the plaintiffs alleged that the defendants had threatened to disregard the cease and desist order of the Commission and that the plaintiffs were, therefore, entitled to an injunction prohibiting such disregard, and further that the sale and conveyance of said two gathering systems had not been approved by the Commission, and that the plaintiffs, therefore, were entitled to an injunction prohibiting such sale until it was approved by the Commission. In the complaint in the state court the plaintiffs prayed for a temporary restraining order. The District Court of Shawnee County, Kansas, issued its restraining order, restraining defendants from consummating the sale or delivery of the two gathering systems until the further order of the court, and restrained the defendants from doing anything to change the existing situation with regard to the sale of such systems, or from changing the method of acceptance, or transporting oil in said systems until the further orders of the court.

Thereafter on October 11, 1955, the Pipe Line Company received by mail a memorandum opinion and order of the Commission dated October 10, 1955, which had been entered by the Commission without prior notice to Sinclair Pipe Line Company. The opinion and order found that the Pipe Line Company and Sinclair Crude Oil Company were affiliated companies; that they were wholly owned by Sinclair Oil Corporation. The order decreed that it was in the public interest for Sinclair Crude Oil Com-

pany to resume the purchase of oil from wells connected to said two gathering systems until a hearing by the Commission, set for November 8, 1955, and that the Pipe Line Company transport oil so purchased by Sinclair Crude Oil Company at the rate prevailing on September 30, 1955, until said hearing.

Apparently upon the entry of the Commission's order of October 10 or very shortly thereafter, the Attorney General's office notified the attorneys for the Pipe Line Company that it was the intention of the Attorney General to institute a mandamus action in the Kansas Supreme Court on October 13, 1955, to compel compliance with the Commission's order of October 10.[5] On October 13 the Pipe Line Company removed the state court action to the United States District Court for the District of Kansas and thereupon and on the same day instituted this separate action, invoking the three-judge jurisdiction of the federal court.

The cause of action which the Pipe Line Company seeks to assert in this case is predicated on the grounds that the Kansas Conservation Law does not confer power upon the Commission to regulate the sale of an interstate pipeline system, or any part thereof, and further that if the statute be so construed it is unconstitutional because in conflict with the Federal Constitution.

This cause comes on before us upon defendants' motion to dismiss. While under such motion the only question is whether we have jurisdiction to entertain the complaint, it is agreed that the underlying basic question is whether the Corporation Commission has jurisdiction and power to regulate the terms and conditions of a sale of a part of an interstate pipeline system, or in other words whether the Pipe Line Company may sell parts of its interstate pipeline system without the authority of the Commission. It was further stipulated and agreed that procedural irregularities in the issuance of the order directed to the Pipe Line Company should be waived and that the court should determine the basic issues as though all statutory procedural requirements had been observed in the issuance of the order complained of.

The Corporation Commission predicates its jurisdiction over the attempted sale of these two segments of the interstate pipeline on the statutes relating to the transportation of oil and liquid fuels, on the oil and gas conservation statutes of Kansas and upon the statutes giving it jurisdiction of all public utilities and common carriers.

Section 55-501 declares pipelines to be common carriers. Section 55-502 makes it their duty to receive and transport oil without discrimination. Section 55-504 gives the Corporation Commission supervision and control over them in the performance of such business.

Kansas in line with other oil and gas producing states has a comprehensive statutory plan for the prevention of waste. Chapter 55, Article 6, G.S.1949, relates to the regulation of the production and sale of oil. The over-all purpose of the statute is to prevent waste. The administration of the act is entrusted to the Kansas Corporation Commission. Section 55-601 prohibits the production of oil in such manner and under such circumstances as to constitute waste. Section 55-602 defines waste as follows: The term " 'waste' as used herein, in addition to its ordinary meaning, shall include economic waste, underground waste, surface waste, waste of reservoir energy, and the production of crude oil or petroleum in excess of transportation or marketing facilities or reasonable market demands." The Section then gives the Corporation Commission power to make all rules and regulations to prevent waste.

Section 55-603 in general provides that whenever the full production from a common source of supply of crude oil can only be obtained under conditions (a) constituting waste as defined in the statute, (b) independently of waste, under

---

5. It is so alleged in the complaint in this case.

conditions injurious to the respective correlative rights of the producers therein, or (c) under conditions unreasonably discriminating against other pools, then any person having the right to drill and produce oil from a pool may take therefrom, currently no more than that portion of all crude oil which may be produced currently, without waste, or without injury, or without discrimination, with the productivity of a well or wells considered in connection with the acreage reasonably attributable to each thereof bears to the productivity of all the wells considered in connection with the acreage reasonably attributable to each well. The Section then provides that it is the duty of the Corporation Commission "to so regulate the taking of crude oil from any pool within the state of Kansas as to prevent waste therein or, independently of waste, to prevent the inequitable or unfair taking of crude oil therefrom by any person and to prevent unreasonable discrimination."

Section 55–604 makes it the duty of the Commission to allocate the reasonable market demand for oil and allocate among the various pools the amount of oil that may be produced therein. It sets out many factors to be considered by the Commission in making such determinations. It speaks of the allowable production of each well. It provides that the Commission shall consider the reasonable ability of each producer to satisfy his desires from oil produced in the state without concentrating purchases in any selected pool or pools.

Section 66–101 gives the Corporation Commission full power, authority and jurisdiction to supervise and control the public utilities and all common carriers doing business in Kansas, and gives the Commission power to do all things necessary and convenient for the exercise of such power, authority and jurisdiction.

█ There can be no doubt of the Corporation Commission's jurisdiction under these statutes to regulate the taking of oil by a common carrier operating in a pool, even though it is engaged in interstate commerce, but may the Corpora-

tion Commission exercise jurisdiction over the sale of the pipeline system or a part thereof of such a common carrier and compel it to remain in business if it desires to liquidate and withdraw from the transportation field? There is no express statutory authority to this effect in the conservation statute, the statute making pipelines common carriers, or the statute giving general jurisdiction over all public utilities and common carriers. If such power exists it must be found under the implied powers given the Commission to do all things necessary to effectuate the broad purpose of the conservation statute to prevent waste.

Although many of the phases of the conservation statute have been before the Supreme Court of Kansas, this question apparently has never been considered by that court. No case is called to our attention where it was contended that the Corporation Commission under its general powers to prevent waste could regulate the sale of an interstate oil pipeline or require it to stay in business because waste might result if it withdrew from the field.

█ Under these circumstances, the question arises whether we should exercise our jurisdiction and decide the issue or relegate the parties to a state tribunal where the construction of the statute would become the established law for all times. Our construction of the statute would not settle the law. It would only declare the law of this case. If the Kansas courts should construe the statute as not conferring such powers sought to be exercised by the Commission in this case, this case would be at an end. Only if the statute were construed as contended for by the Commission would a federal question arise.

██ We think the law is well settled with respect to the duty of a federal court to exercise its diversity jurisdiction or to refrain from doing so. A long line of cases has held that diversity jurisdiction was for the benefit of litigants and not for the convenience of the courts and that barring some recognized public

policy or exceptional circumstances federal courts must exercise such jurisdiction. It has been held that merely because the answer turns upon a question of state law which is difficult and has not been settled by state courts does not relieve federal courts of their duty to exercise their jurisdiction. These principles and cases which have declared them are analyzed and restated in Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9.

Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, recognized that the complaint raised substantial constitutional issues and that there was no state action pending. Nevertheless it was held reversible error for the district court to decide the merits. The supreme court said that a definitive ruling on the state law might make unnecessary the determination of the federal constitutional questions. It was declared that the interests of avoiding a premature constitutional adjudication required the federal court to hold the matter until an action could be begun in the state courts to secure a determination under state law. And in Public Utilities Commission of Ohio v. United Fuel Gas Co., 317 U.S. 456, 457, 463, 63 S.Ct. 369, 373, 87 L.Ed. 396, the court said that "Where the disposition of a doubtful question of local law might terminate the entire controversy and thus make it unnecessary to decide a substantial constitutional question, considerations of equity justify a rule of abstention."

The conditions under which a federal court should stay its hand are well summarized in Meredith v. City of Winter Haven, supra [320 U.S. 228, 64 S.Ct. 12], where the court said: "So too a federal court, adhering to the salutary policy of refraining from the unnecessary decision of constitutional questions, may stay proceedings before it, to enable the parties to litigate first in the state courts questions of state law, decision of which is preliminary to, and may render un-

necessary, decision of the constitutional questions presented. * * * *It is the court's duty to do so when a suit is pending in the state courts, where the state questions can be conveniently and authoritatively answered, at least where the parties to the federal court action are not strangers to the state action."* [6]

We think that applies with special force to this case. Here the Corporation Commission had brought an action against the Pipe Line Company in the District Court of Shawnee County, Kansas, on September 30, 1955, to enjoin it from selling its pipeline until the Commission could hold a hearing thereon. The Pipe Line Company could have urged in opposition to such action every ground which it asserts in this action.

We think there is yet greater reason why in the exercise of reasonable equitable discretion we should stay our hand in this case. When on or about the 10th day of October, 1955, the Attorneys for the Pipe Line Company were advised by the Legal Department of the Attorney General that he intended to institute a mandamus action in the Supreme Court of Kansas on October 13 to settle the questions raised by the Commission's order of October 10, the Pipe Line Company on the 13th day of October removed the state action to the United States District Court, and on the same day began this independent action to invoke the three-judge jurisdiction to settle the same issues involved or which could be presented by its answer in the state action, removed by it to the federal court. We think the conclusion is justified that the Pipe Line Company has abandoned the cause of action which it removed to the federal court and that it perhaps did not remove it with intent and for the purpose of having the federal court adjudicate the issues, but that it was perhaps done for whatever benefit it could derive by such removal in seeking an adjudication of the same issues in this independent action before a three-judge court.

6. Emphasis supplied.

■ The issues in controversy between the parties should be speedily resolved. There has been some delay but it has been caused by the steps taken by the Pipe Line Company. It is our view that there is available a speedy and adequate remedy for the Pipe Line Company in the state courts. We further feel that an adjudication in the state courts may remove any federal question lurking in the background. For these reasons the court concludes that the proceedings should be stayed and it is hereby stayed for a period of 20 days to afford the Attorney General and the Corporation Commission an opportunity to institute a proper proceeding in the state courts, where the speediest determination of the issues herein presented may be had. Pending the filing of such an action, the order of this court with respect to the operation of the pipelines in question and the duty to continue to take and transport such oil shall remain in force and effect.

### Number T–1273.

The additional facts necessary to consider in this case are these. The Sinclair Crude Oil Company [7] is a wholly owned subsidiary of Sinclair Oil Company. It is incorporated under the laws of Delaware. It is a purchaser of oil and petroleum products. Prior to October, 1955, it was buying oil in the stripper well fields served by the Pipe Line Company's Paola and Eureka Gathering Systems. This oil was delivered to the Pipe Line Company for transportation to its ultimate destination. On September 15, 1955, Crude Oil served notice on all producers from whom it was purchasing such oil that after September 30, 1955, it would no longer purchase any oil in these fields. Thereafter, Crude Oil was served with a copy of the Commission's order of October 10, 1955, set out in the statement of facts in Number T–1272, and was directed therein to resume its normal purchase of oil from wells connected to the two pipelines at the prevailing price, until its right to discontinue the purchase of such oil was determined in an appropriate hearing before the Commission.

· Thereafter, on October 13, 1955, Crude Oil instituted this action, seeking to enjoin the enforcement of the Commission's order. As in Number T–1272, it was stipulated that procedural irregularities in the issuance of the challenged order should be waived and the basic issue in the case should be determined. Reduced to simple terms, it is stated that the question is whether the Commission has jurisdiction to compel Crude Oil to purchase oil from these fields when it wants no oil and when it apparently desires to withdraw from business.[8]

The jurisdiction which the Commission seeks to assert over Crude Oil arises by virtue of the conservation laws of Kansas set out in the portion of the opinion dealing with Number T–1272, and particularly with Sections 55–603 and 55–604. As already pointed out, the broad purpose of the statute is to prevent waste. These sections in the main relate to producers or purchasers of oil from a pool. They speak of the right to take and in general limit such right to less than the maximum capacity of the pool or below the maximum requirement or desire of a producer or purchaser to take oil from a pool, in the interest of conservation and in order to prevent waste, as defined in the statute. Nowhere is there language expressly conferring jurisdiction to require one to take oil who desires no oil or wishes to withdraw from the field and from the production or purchase of oil. If such power exists, it does so by virtue of the implied powers of the Commission to regulate the production of oil from a pool to prevent waste.

In the main, the question whether we should exercise our diversity jurisdiction in this case or stay our hand and require the parties to seek such an adjudication in the state courts is no different from

---

7. Herein called Crude Oil Company.

8. The complaint alleges that there is another purchaser able and willing to purchase oil but that in our opinion does not change the basic question.

the same question in Number T–1272. The same forum is available to the parties as is available in the Pipe Line Company case. A construction of the statute holding that the Commission has no authority to compel one to purchase oil when no oil is desired would end the case and remove all federal questions.

The only difference in the two cases is that Crude Oil was not a party to any state action, nor did it participate in the removal of any such action to the federal court. But that in our opinion is not enough to make inapplicable the philosophy of the cases analyzed in Number T–1272.

■ While the Pipe Line Company and Crude Oil are separate corporations, they are not strangers to each other. They are both affiliates of Sinclair Oil Company. These two suits arise out of connected and inter-related acts. They pose the same questions and both arise by virtue of the Commission's order of October 10, 1955. As in Number T–1272, a construction of the conservation statutes may end the controversy and eliminate all federal questions. The court, therefore, concludes that this action should likewise be stayed and it is hereby stayed for a period of 20 days to afford the Attorney General an opportunity to institute a proper proceeding in the state courts, looking to a speedy determination of the power of the Commission under the conservation statutes. Pending the filing of such an action, the order of this court with respect to the duty of Crude Oil to continue the purchase of oil from these wells shall remain in force and effect.

## Supplemental Opinion

Sinclair Pipe Line Company plaintiff in Number T–1272 and Sinclair Crude Oil Company plaintiff in Number T–1273 have filed motions to correct, delete from, add to, modify and change the findings of fact and conclusions of law as reflected in the opinion of this court and to modify the opinion as entered January 16, 1956. Many of the objections to the opinion in these two motions raise the same questions. Sinclair Crude Oil Company raised more objections than does Sinclair Pipe Line Company and for that reason its motion will be considered first.

### Number T–1273

We did erroneously state that Crude Oil instituted this action against the Commission and the Attorney General. The Attorney General was not a party to this case although he was a party to the companion case of Sinclair Pipe Line Company, Number T–1272, filed on the same day. In considering these two cases for the purpose of writing a consolidated opinion, we inadvertently placed the Attorney General in this case, but stating that he was a party thereto did not make him such nor did it affect anyone's rights as it is obvious on the record that he is not such a party. Objection is taken to the statement in the opinion that Crude Oil "instituted an action against the Commissioners * *." Crude Oil's complaint in this court names Harry Snyder, Jr., and John I. Young, as Members of Said Corporation Commission. True they are also named as individuals, a fact we did not note in the opinion, but again who is hurt thereby? The nature of the suit is apparent upon the face of the pleadings. If further proceedings should be had in this court that will be obvious to the court and if no further steps are necessary in this action it becomes immaterial.

No formal stipulation was entered by the parties that the basic issue in the two cases were the same. It was, however, stated by the members of the court that in their view the basic issue was the same in the two cases and that, therefore, they should be tried together. That the parties concurred in this statement is evidenced by the fact that no objection was lodged to the order to try the cases together and that they were thus tried. Of course, the facts about which there is no dispute in the two cases differ but the basic issue in each is whether with respect to those facts the Corporation Commission had jurisdiction.

Complaint is also made of the statement in the opinion that Crude Oil "stipulated that procedural irregularities in the issuance of the challenged order should be waived and the basic issue in the case should be determined." It is true that Crude Oil did not so stipulate but it did acquiesce in the statement by the court that procedural irregularities would be disregarded and that the court would proceed to a determination of the basic issues without considering any irregularities in the issuance of the order. The whole case was presented upon that theory and no objection was raised thereto by Crude Oil. That this is so is clearly established in Crude Oil's brief in this case in which it states, "We are passing without comment any question concerning procedural steps before the Corporation Commission having to do with notice and hearing in line with this Court's suggestion made at the time of argument."

Crude Oil takes exception to the statement in the opinion that a "state forum is available for this plaintiff where the questions of state law should first be adjudicated." That statement in our view is legally correct. It does not mean nor do the decisions require that an action be actually pending in such a forum but the state forum is available and because no action was pending therein against Crude Oil we stayed this proceeding for the purpose of giving the Commission an opportunity to institute such an action.

Finally it is asked that we clarify that part of the opinion and order by the court that "pending the filing of such an action, the order of this court with respect to the duty of Crude Oil to continue the purchase of oil from these wells shall remain in force and effect." We feel there is no ambiguity in this portion of the order and that it means just what it says. If a state action is filed jurisdiction of the parties and the subject matter will reside with that court and we do not think that we should impinge upon that jurisdiction or attempt to limit that court in the full exercise of its jurisdiction. We have full faith in the ability of that court to make all orders looking to the effective protection of the rights of the litigants before the court. Finally we are asked to clarify that portion of our order in which we provided that the proceedings "should be stayed and it is hereby stayed for a period of 20 days * * *." We think the legal effect of that statement is obvious and needs no further explanation or clarification.

### Number T–1272

The one point which Sinclair Pipe Line raises in its motion which has not been effectively disposed of by what has been said herein is its request that we delete on pages 18 and 19 of our opinion [147 F.Supp. 637] the following statement: "We think the conclusion is justified that the Pipe Line Company has abandoned the cause of action which it removed to the federal court." That statement was advisedly made and the court sees no reason for deleting it.